DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Phyllis Gomcsak, appeals from the decision of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} This case involves the death of Phyllis Gomcsak's ("Gomcsak") husband, Norman Gomcsak ("Decedent"). Decedent worked as an electrician/motor inspector at the U.S. Steel Mill ("U.S. Steel") in Lorain, Ohio, from 1942 to 1984. Decedent's work put him in close contact with asbestos *Page 2 
products, including; asbestos pipe covering, asbestos brake shoes, asbestos tape, asbestos protective clothing, and asbestos hot tops systems.
 {¶ 3} In February of 2000, Decedent sought medical attention after a sudden onset of symptoms occurred. He died on March 10, 2000. The death certificate listed seven different causes of death, however, the parties stipulated "[t]hat the cause of [Decedent's] death was lung cancer[.]" Following Decedent's death, Gomcsak filed a workers' compensation claim, alleging that Decedent had died of asbestos related cancer. The Ohio Bureau of Workers' Compensation ("the Bureau") granted Gomcsak occupation disease death benefits. Pursuant to R.C. 4123.521, Appellee, U.S. Steel, appealed from the Bureau's decision. The case went to trial on May 31, 2007. The following stipulation, among others, was read to the jury: "That during [Decedent's] career at U.S. Steel he worked around asbestos and asbestos containing products[.]" The issue remaining for the jury was whether Decedent's lung cancer was caused by the exposure to asbestos while he worked at U.S. Steel. Among other witnesses, Gomcsak presented testimony from four expert witnesses: Dr. Joseph Sopko, Dr. Paul Venizelos, Dr. James McMahon, and Dr. James Martin. U.S. Steel presented the testimony of one expert witness, Dr. John Murphy. Prior to the trial, U.S. Steel filed a motion in limine as to the scope of Dr. Martin's testimony. The trial court granted U.S. Steel's motion and limited Dr. Martin's testimony to the report he created in 1992. At the conclusion of the trial, the jury unanimously found in favor of U.S. Steel. *Page 3 
Gomcsak timely appealed this decision, raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED WHEN IT GRANTED [U.S. STEEL'S] MOTION IN LIMINE AND RESTRICTED THE SCOPE OF THE TESTIMONY OF [DR. MARTIN] PREVENTING HIM FROM OFFERING OPINION ON THE CENTRAL ISSUE IN THE CASE, I.E., WHETHER THE LUNG CANCER DEATH OF [DECEDENT] WAS CAUSED BY HIS EXPOSURE TO ASBESTOS DURING HIS EMPLOYMENT WITH [U.S. STEEL]."
 {¶ 4} In her first assignment of error, Gomcsak contends that the trial court erred when it granted U.S. Steel's motion in limine and restricted the scope of Dr. Martin's testimony, preventing him from offering an opinion on the central issue in the case, i.e., whether the lung cancer death of Decedent was caused by his exposure to asbestos during his employment with U.S. Steel. We do not agree.
 {¶ 5} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion *Page 4 
standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 6} In its motion in limine, U.S. Steel requested that Dr. Martin's testimony be limited to the findings made in his 1992 report. U.S. Steel pointed to Lorain Cty. Loc. R. 11(1)(A) and (B) to argue that Dr. Martin's deposition testimony did not reflect his written report. We agree.
 {¶ 7} Lorain Cty. Loc. R. 11(1)(A) requires the parties to exchange written reports of medical and expert witnesses who are expected to testify at trial. Lorain Cty. Loc. R. 11(1)(B) states that an expert witness may not testify at trial without an expert report. The rule further provides that
 "[i]t is counsel's responsibility to ensure that each report adequately sets forth the expert's opinion, including if necessary the procurement of supplemental reports. The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his expert report." (Emphasis added.)
 {¶ 8} U.S. Steel stated that Gomcsak provided it with the expert report of Dr. Martin. This report was authored in 1992 at the request of the Bureau. Specifically, Dr. Martin "was requested to consider and therefore opined upon the sole issue of whether `the claimant suffered from asbestosis as a result of occupational exposure.'" (Emphasis omitted.) U.S. Steel further argued that "Dr. Martin was not asked to prepare a report with regard to the cause of death of [Decedent]." (Emphasis omitted.) U.S. Steel contended that "Dr. Martin does not express an expert opinion regarding the cause of [Decedent's] death in his expert *Page 5 
report completed in 1992. Further, Dr. Martin has never authored any kind of report stating his opinion with regard to issues concerning [Decedent's] death." Our review of Dr. Martin's 1992 report supports this argument.
 {¶ 9} Dr. Martin's 1992 report discussed Decedent's medical and work history. The report disclosed that Decedent smoked about a pack of cigarettes a day for 25 years, but quit in February of 1970. Dr. Martin's report indicated that the questions the Bureau presented him were "1) Does [Decedent] have any symptoms relating to occupational exposure? 2) Does he have any chest x-ray evidence of occupational lung disease in general, and asbestosis in particular?" In answering these questions, Dr. Martin indicated that 1) Decedent "does not suffer from any disease, occupational or otherwise[,]" and 2) that he had "two separate conditions: smoking-related COPD and asbestos-related lung/pleural findings. It is important to point out that these asbestos-related findings do not predict progressive lung disease, lung cancer, or mesothelioma." Dr. Martin went on to state that "if he does develop any pulmonary or respiratory problem in the future, that problem should be examined closely in light of the current findings." Gomcsak particularly notes that Dr. Martin's 1992 report stated that "[s]hould [Decedent] develop a bronchogenic carcinoma in the bases of his lungs, that could also be linked to previous asbestos exposure." (Emphasis added.) However, we note that Dr. Martin further stated that "I give these examples only to show that if he develops any respiratory problems in the future, the specific nature of the *Page 6 
problem has to be examined very closely to see if it is related to asbestos exposure."
 {¶ 10} According to Gomcsak's response to U.S. Steel's motion in limine, Dr. Martin, prior to his deposition, reviewed the reports and opinions of the other experts in this case, along with the autopsy report and other clinical records. However, Gomcsak did not file a supplemental report with regard to Dr. Martin's updated opinion of the case. See Lorain Cty. Loc. R. 11(1)(B). Gomcsak argued that
 "a fair reading of Dr. Martin's 1992 report discloses that in his opinion a subsequent development of lung cancer in [Decedent's] case would be related to occupational exposure to asbestos. It is a very short step from that statement to also then attribute death to the lung cancer, and though admittedly the 1992 report does not (and indeed could not) do that, under the circumstances of this case it cannot be said that [U.S. Steel] would suffer any undue prejudice through the admission of this opinion."
We do not agree with this statement.
 {¶ 11} First, we note that Gomcsak has misstated Dr. Martin's report. The report does not indicate, as Gomcsak argues, that "a subsequent development of lung cancer * * * would be related to occupational exposure to asbestos." Rather, the report states that if Gomcsak developed lung cancer that it "could also be linked to previous asbestos exposure." (Emphasis added.) We read Dr. Martin's report as a warning that subsequent lung cancer could be linked to asbestos exposure, not, as Gomcsak argued, that it inevitably would be related to asbestos. On appeal, Gomcsak contends that "[t]o prevent Dr. Martin from offering a *Page 7 
specific opinion as to causation of the lung cancer at the time of trial, on the basis that Local Rule 11 had not been complied with, even though his report did in fact warn of the lung cancer risk, was an abuse of discretion." As such, Gomcsak appears to concede that the statement in Dr. Martin's report was merely a warning, not his opinion or diagnosis of the cause of death.
 {¶ 12} U.S. Steel contends that it
 "would clearly have been prejudiced by the submission of Dr. Martin's testimony concerning the cause of [Decedent's] death. Such testimony is absolutely outside the scope of the expert report provided by [Gomcsak] to [U.S. Steel] in preparation for trial and thus clearly demonstrates prejudice to [U.S. Steel]."
We agree. Accordingly, we find that the trial court did not abuse its discretion when it required the parties to comply with the Lorain County Local Rule and therefore restricted the jury from hearing Dr. Martin's testimony regarding his opinion on the ultimate cause of death. Gomcsak's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT [GOMCSAK'S] MOTION FOR NEW TRIAL BECAUSE THE JURY VERDICT WAS MANIFESTLY UNJUST AND AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 13} In her second assignment of error, Gomcsak contends that the trial court erred when it failed to grant her motion for a new trial because the jury verdict was manifestly unjust and against the weight of the evidence. We do not agree. *Page 8 
 "Whether to grant or deny a Civ. R. 59(A)(6) motion rests with the trial court's sound discretion, and the decision cannot be reversed by a reviewing court without finding an abuse of discretion by the trial court. Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. A decision is unreasonable if there is no sound reasoning process that would support that decision." (Internal citations and quotations omitted.) McBride v. Quebe, 2d Dist. No. 21310, 2006-Ohio-5128, at ¶ 4.
 {¶ 14} The relevant portion of Civ.R. 59 reads, in pertinent part:
 "(A) A new trial may be granted * * * on all or part of the issues upon any of the following grounds:
 "(6) The judgment is not sustained by the weight of the evidence[.]"
 {¶ 15} When a party moves for a new trial on the ground that the jury's verdict was against the manifest weight of the evidence the trial
 "court must review the evidence and pass in a limited way on the credibility of the witnesses. It must appear to the court that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence. * * * If the jury's verdict is supported as to each element of the plaintiffs case by some competent and apparently credible evidence, a defendant's motion for new trial should not be granted." (Internal citations and quotations omitted.) McBride supra, at ¶ 4.
We must then review this decision for an abuse of discretion. Id.
 {¶ 16} Upon review, we find that the trial court did not abuse its discretion by finding that the jury's verdict was sustained by the weight of the evidence. As Gomcsak states on appeal, "the only remaining issue then was whether the decedent's exposure to asbestos at U.S. Steel was the competent producing cause of his lung cancer." The trial court could clearly find evidence from the testimony *Page 9 
presented at trial to support the jury's finding that Decedent's lung cancer was not caused by asbestos exposure during his employment with U.S. Steel.
 {¶ 17} At trial, U.S. Steel presented testimony from Dr. John Murphy. Dr. Murphy testified that he practices in the areas of oncology and hematology. He explained that "[t]he area of oncology is an area of medicine which is devoted to the care and management and diagnosis of patients with [cancer]." Dr. Murphy testified that he had reviewed the records in the instant case.
 "The records included the copies of the inpatient records from the Lorain Community Hospital for two admissions there, and then the records from Dr. Floro's office, his office records, and then other records that included the reports of some radiographic studies, and then the final document was actually a copy of the autopsy report issued by the University Hospitals."
According to Dr. Murphy, the autopsy report indicated that Decedent had a tumor called an adenocarcinoma. Dr. Murphy testified that this was a "very common type of cancer, and it's significantly related to a history of smoking." Dr. Murphy testified that Decedent's medical records indicated that he had had many problems with his lungs through the years, going as far back as 1974. According to Dr. Murphy, "[t]here are multiple reports of pulmonary function studies done by his physician as well as by other outside consultants. The interesting things about these pulmonary function studies is, they did not show the classical changes of asbestosis." Dr. Murphy further explained:
 "Asbestosis is a disease process associated with an exposure to asbestos. * * * [I]n the pulmonary function studies that are routinely found with asbestosis include some very specific changes. There is *Page 10 
a decrease in the lung capacity that's called the vital capacity of the lung. That is a classic, one of the classic findings of asbestosis. In addition to that, there are other changes of breathing and the obstructive phenomena of limited breathing. These were not found in [Decedent's] pulmonary function studies. Up until a month before his death, his vital capacity was normal. He did not at any time show a change in vital capacity, which is one of the specific findings associated with asbestosis."
 {¶ 18} Dr. Murphy went on to testify that there was nothing in the autopsy that showed any possible relationship to asbestosis or asbestos exposure. When asked to explain the relationship between asbestosis and lung cancer from asbestos, Dr. Murphy explained that "[t]here is an increased incidents (sic) of lung cancer in those individuals who have a pathologic process of asbestosis, which is fibrosis in the lung tissue, in the interstitial lung tissue." Dr. Murphy stated that his review of the pathology reports contained within the autopsy report did "not indicate any process associated with asbestos exposure or asbestosis." He further testified that Decedent's records did not show a connection between his lung cancer and asbestos exposure. According to his review of Decedent's records, Dr. Murphy testified that Decedent had a prolonged history of smoking cigarettes. He affirmed that "without asbestosis already being present, someone will not get lung cancer from asbestos exposure[.]" Finally, Dr. Murphy opined, "upon a reasonable degree of medical probability" that Decedent's lung cancer was not related to an asbestos exposure. Dr. Murphy agreed that Decedent had asbestos fibers in his lungs, but that fact did not change his opinion as to the cause of the cancer. Upon review of the record below, we cannot find that the trial court *Page 11 
abused its discretion by finding that the jury's verdict was supported by the manifest weight of the evidence. As such, we find that the trial court did not abuse its discretion in overruling Gomcsak's motion for a new trial. Therefore, Gomcsak's second assignment of error is overruled.
 III. {¶ 19} Gomcsak's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 12 
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
 WHITMORE, J., DICKINSON, J., CONCUR *Page 1